The first case of the morning is Lohbeck v. Astor. Counsel? Good morning, Your Honors. May it please the Court. My name is Harvey P. Sackett, and I represent the appellant Stephen J. Lohbeck. I wish to reserve two minutes for rebuttal. This Court has held that regardless of the presence of counsel at an administrative hearing, an administrative law judge has a duty to fully develop all issues. Lohbeck maintains that the ALJ failed to do so in this case. Specifically, Lohbeck argues that the ALJ failed in his duty to determine the mental demands of his past relevant work. What did the psychologist's report say about this? Insofar as his past relevant work, Your Honor? Well, no, with respect to his mental ability to concentrate. The psychologist said that he had moderate difficulties in terms of concentration, persistence, and pace. Well, are you alleging that standing in one place and inspecting paint requires more than semi-skilled work as defined by 20 CFR 404-1568B? What I'm suggesting is this, Judge Nelson. If we take that at face value, that might be a logical conclusion. However, I don't think that simple one-sentence description tells us everything we have to know, and this is the reason why. Common sense would tell anyone, even if we're not vocational experts, that if you're on the line inspecting new cars as they come off and down the semi-line for paint, that requires somebody to maintain focus all day long, bumper after bumper, car after car. This individual doesn't get a pass during the course of the day other than their lunch break to be, so to speak, off. They've got to maintain concentration at all times. They've got to make sure that each and every car they inspect is correct, and if it's not correct, they have to be prepared to do whatever is necessary to take it off the line or report it to somebody. But would he have to go back to that particular job? If he could perform semi-skilled work, as the testimony and the evidence seems to indicate, couldn't he have another job? He very well might, Judge Nelson. However, this particular decision is a step-four finding. The judge said he could go back to his past relevant work. Now, if, in fact, we determine, or the court finds, rather, that his moderate deficiency does not permit him to perform all of the tasks of this job, not simply the one-sentence blurb, that puts the case in a different light. At that point, we're at step five. So if the judge had said not only can he perform his past relevant work, but as an alternate finding, he can do something else, your question, I think, would be more relevant to the actual facts. My point is the judge was sending him back to the same job. Yes, Your Honor. Thank you. You're welcome. And the reason, again, if I can just expand on your question, Judge Nelson, why that finding was flawed, is because the rulings that are relevant in this case, Social Security 8261 and 8262, basically say as a starting point, we're going to rely on what the claimant tells us about their job. But that's not the starting and stopping point. It says that description may be adequate. And it also says, 8262, that particularly in cases involving mental impairments, we've really got to nail down with specificity the mental demands of the job. The claimant's description by itself may not be adequate. And if it's not adequate, we've got to look to what the employer says or they talk about other sources. Other sources in this case would be getting a vocational expert who would say, yes. When you say you, you mean the ALJ. I'm sorry, Your Honor? When you say you, you mean the ALJ is supposed to do that. Yes, Your Honor. In a situation like that, we have to ask more questions. The ALJ has got to ask more questions. So to simply lock in the claimant. Or obtain more evidence. I'm sorry, Your Honor? Or obtain more evidence. Or obtain more evidence, correct. And here the commissioner has said that Lohbeck is locked into his one-sentence description, written on a pre-printed form. And that's simply not the case. Even if the court were to conclude that the job is a simple job, as the ALJ said it was, the fact remains that the ALJ's findings are inherently inconsistent. And specifically, the ALJ first said that Lohbeck had a moderate deficiency in terms of concentration, persistence, and pace. Yet later on, in his residual functional capacity finding, he said that he could do simple to mildly complex tasks. There's a lack of connection here. One doesn't logically. Well, there may be some simple, not complex tasks that he could perform. And others that he couldn't. That's correct, Judge Reinhart. There may be many simple tasks that don't require concentration unbroken during the entire period. That's correct. And it's the claimant's position, Judge Reinhart, that, again, if there were more evidence, this job, as I've described it before, as I see it taking place, is not a job that is as simple as the ALJ concluded. But rather it requires much more in the way of mental demands to focus, to work to specificity. Well, I think it's still a simple job, but it's one that requires concentration. That's correct. So then we talk about what's the implication of a moderate deficit. In other words, let's talk about 100 widgets that somebody has to assemble during the course of the day. So let's say that the individual has a moderate deficit. And even though moderate is not defined, we conclude that, okay, he can put together 80 of those widgets just perfectly. He has no problem doing that. But he still has a moderate deficit, so that during the course of the day, those other 20 widgets, number one, are either not going to be put together at all because of a lack of focus, or, number two, they're going to be put together incorrectly. So we can say that during the course of the day the person was able to do a good portion of the job, but the fact remains the employer is not going to accept somebody doing 80% of the job. They're going to want them to do closer to 100% of the job, and that's why a moderate deficit. Well, you know, your example of putting together 100 widgets, if you have enough time, somebody who has some kind of a concentration deficit may be able to put together 100 widgets in a day. There may be times when he's not concentrating on that job, and he may just look off and do something else and then go back to his job of assembling widgets. And he may be able to get them all done within that. He may do them very quickly and be able to do them within the eight hours, which seems somewhat different from standing on an assembly line where the cars are passing regularly and you can't stop the line while your concentration is gone. That's the point that I was trying to make. Well, that's good because you're two minutes down to two minutes. Thank you for the reminder. Thank you, Your Honors. Good morning, Your Honors. Armand Roth for the Commissioner of Social Security. I would just like to say that what we have in this case is a very limited medical record of 40 to 50 pages, and we essentially have different interpretations of the same evidence in this case. What the record shows is that Mr. Lohbeck had mild depression, a history of hemorrhoids in remission, and a skin tag that may need minor surgery and may still cause pain when going to the bathroom. I submit that those conditions and the associated limitations did not prevent Mr. Lohbeck. I think we're mainly interested here in the mental, the concentration problems. Let me address that, Your Honor. Let me address especially the moderate limitations on maintaining concentration, persistence, and pace. The only, you know, really medical evidence that you have in this case is a report of a state agency doctor, Dr. Craig Smith, that appeared at pages in the mental residual functional capacity at pages, I believe, 17. Well, you have a factual finding by the ALJ. The ALJ? She has moderate difficulties in maintaining concentration, persistence, or pace. Yes. Whatever the evidence is, that's the determination of the ALJ. The determination of the ALJ was based in particular on Dr. Craig Smith with regard to the moderate limitations. I'd like to point out, Your Honor, that the state agency physicians work for Social Security, and per our regulations, they have to follow our regulations and our policies. Our policies explain how this mental RFC, the POMS, and I have a slide for you if you want, is formulated. The first part, when you define the actual specific limitation in specific areas, is a worksheet that you use for the final determination, and it's a final determination on page 19, which is the actual effect of the limitations and what the person can actually do despite the limitations analyzed in the worksheet. Something that tells us that when he has, in your volumes there, something that tells us that when he has difficulty concentrating, he can stand on an assembly line and inspect cars? He can do simple repetitive work. Well, that's not the answer. It doesn't answer the question. He can do simple repetitive work. Can he concentrate sufficiently to stand on an assembly line as cars pass by and look for paint problems? The ALJ described the mental demands of the job as defined by Plantev. In his application, there is no contradictory evidence, any ambiguity. This disability report includes what level of mental capacity you need for the jobs, and it explains, for instance, it doesn't have to write reports. It doesn't have to use tools. Mental ability to inspect a car. There's no question about that. Does he have the concentration that you need to stand on a line as cars go by one by one and see and inspect each car without losing concentration? There is no proof that he cannot. I'm sorry, Your Honor? Or that he can. Well, there is substantial evidence that he can. I submit that the fact that he can do simple repetitive work, in addition even when the doctor said he could do mildly complex tasks, fall within the ambit of a job that is essentially one or two tasks like inspecting, inspecting paints on a car. And I submit this is the way to properly interpret the only evidence that you have. Your Honor, let me go back for one second. If you just had just any doctor in the world saying, well, this person has, you know, moderate, we would have moderate limitations on concentration, persistence, and pace, without more, we would not necessarily know what are the implications. I'm submitting that evidence. That's correct. We wouldn't know what the implications are, which might be a good reason for the ALJ to call a vocational expert and say to him, with this kind of limitation, can he perform this kind of job? Not first. Not when actually it's not just any kind of doctor, but a doctor that's applying our policy saying that in Section 3, the functional capacity assessment, you're going to say if there are any specific limitations that prohibit some kind of unskilled simple work. There is no proof provided by the description of plaintiff that the work is outside simple repetitive work. And let me add one thing, Your Honor. Did the ALJ ask any questions of plaintiff about his work? Was there any ambiguity to resolve? I just want to submit that even though it's ALJ's burden, claimant's counsel was representing claimant before the ALJ, and he was asked by the ALJ, would you like me to focus on anything specific? Claimant's counsel never raised the issue there was anything missing, and we are still speculating that maybe there are some mental demands, something else that is more complicated. In fact, the ALJ did even raise the issue of stress and asked this person about the impact of stress on his work, for instance, and he asked him for three examples of things that were out, you know, that a normal person would find not stressful, that he would find stressful. Did the ALJ make any specific findings on the mental demands of the claimant's past occupation? What the ALJ said on page 15, that said essentially what this job involves of the transcript of the decision. I think, I'm not sure if it's the accept of record, but it's the second page of the, I'm sorry, the fourth page of the decision when the ALJ says, well, this work only involves two simple tasks, which is, you know, sitting in one space and standing in one spot and inspecting the paint on cars, and this is exactly the way Plante described his job. You could wonder if there is something else, but when you look at actually at the subliminal excerpts when the job is described, there are a number of questions that ask about all the abilities that you need in the job, and for all those other abilities that may involve mental abilities, you know, complexity, essentially the answer is no. And when you're talking about concentration, by the way, also, you know, it's different. Your ability to concentrate is often distinguished by the way, it's not in general, it's in relation of complicity of the task. The more the task is complex, the more steps you have, the more it's difficult to concentrate. This is one of the steps. The more boring a job is, the more difficult it is to concentrate. Well, let me go back, Your Honor. This individual was asked what, you know what? This individual was asked. No, no, I was just discussing the court. I agree with you, it can be boring for people who want to do other things, but this person was asked, what bothers you, what is a mental, in doing the testimony, what is a mental problem that prevents you from doing the job? Well, he said, well, now I'm taking Prozac, I'm doing better, but, you know, what bothers me is stress when things go out of the routine, things that goes out of the ordinary. So talking about boring things and one or two steps work. In his testimony, I take it that he's not as bothered by his job, except the only thing is stress. And if you look at the three examples about stress, in one of the cases he mentioned that he was in litigation when he lost one of his two jobs. In the other one, there were lots of customer complaints and he was let go because of slow business and because maybe he was not a performer, but there were complaints. So those were certainly stressful situations for anybody. So I'm talking about all the mental demands. I'm talking about what the LG did in this case, and I'm talking about what the plaintiff's testimony is about what are the mental problems with regard to his job. It is testified by this, and I think that the LG has an obligation, but there is also some obligation when we are actually speculating now on appeal, when the same attorney, you know, there was an attorney, and he was asked if there was anything on which the LG should focus. It's at the beginning of the hearing, and I think there is some way that should be given to that, Your Honor, as a means. Counsel, in the – I'm having a picture of this man standing there. A car comes along and there's a spot that isn't painted and should be. Does he apply the paint? He doesn't say – Your Honor. I'm sorry. I'm sorry, Your Honor. If a car comes down the assembly line purportedly painted, but there's a 12-inch square that isn't, does he have any responsibility to do anything about that? The way I read his application, he says he doesn't use any tools, I would assume, or equipment. I would assume that on an assembly line, if you're going to paint, you're going to use some kind of tool. Now, I know that opposite counsel say, what does he do? He sees a problem. Does he have to fix it to paint it? I submit, Your Honor, that if there was something missing here and there was something that he should – nothing suggests that he needs to resolve the problem. But if there's something that – if that was the case, what I would have liked to see is, at least at the district court level, opposite counsel submitting additional evidence with regard to what we are speculating about, you know, because we can speculate about what is not said, what is not even suggested, that maybe he has to fix something. No, he is on an assembly line and somebody else has to fix something. That's what – the record doesn't say that he has to paint the cars. So shouldn't the ALJ have caused that to be determined? I don't think that the ALJ has to determine every part of the job of doing a car on an assembly line, even if it's with regard to paint. It's typical that on an assembly line, people's work is divided into certain very specified and limited tasks. And that's how this job is described. All right. Thank you, counsel. Thank you, Your Honors. I first want to go back to Judge Nelson's question to opposing counsel about the ALJ's decision whether or not he talked about the mental demands of the claimants' past relevant work. He did not. There is nothing in this decision where the ALJ says with any sense of detail, these are the mental demands of Lobeck's past relevant work as an assembler. It's simply absent from the record. He simply said that it's a simple job and that he stood in one place all day. Now, the second point I want to make is this. I did represent Mr. Lobeck during the administrative hearing, and I did not ask questions about the mental demands of his job. I did not ask those questions because, quite frankly, I never thought that one could possibly look at this job and come to the conclusion that the ALJ did. To me, it was self-evident, as I spoke earlier, about what this job requires. You've got to be on the line all day. You've got to be, so to speak, on the top of your game all day. You can't take a mental break while you're assembling, while you're looking at cars, as they're coming down the line. You simply don't have that leeway. You've got to perform to task eight hours a day, or in this man's case, nine hours a day. So if I had any notion that the ALJ would come to that conclusion, in hindsight, I would have asked those questions. It never occurred to me at all that there was a need to do so. That's why I never developed that part of the record. On mental demands, he did say, the ALJ, on page 16 of the record, said, the claimant's medically determinable mild depression, a posterior anal fissure, and history of treatment for hemorrhoids do not prevent the claimant from performing his past relevant work. Now, you might, you could say that he referred to his mild depression, which would be relevant to mental depends. Nor did he ask about mental demands of the job. He didn't ask about mental demands of the job. Judge Elston, that's a residual functional finding response, which I think has to be distinguished from what are the mental demands of the job itself. Respectfully, I see it as apples and oranges. They're mutually exclusive to one another. One's an RFC conclusion as opposed to what did the job require mentally. And I submit that he never reached that conclusion, never made a statement in that regard. Thank you, counsel. Thank you, Your Honor. The case just argued will be submitted.
judges: Nelson, Reinhardt, Oberdorfer